**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

————————————————————— x

MARK PRINCIPE, individually on behalf of :
himself and all others similarly situated, :
                                   :   Case No. 2:15-cv-05453-ADS-AKT

          Plaintiff, :

v. :

                                     :   **MEMORANDUM OF LAW IN SUPPORT**

EDISON NATION, LLC, PLYMOUTH DIRECT, :   **OF PLAINTIFF'S MOTION FOR**
INC., EDISON NATION HOLDINGS, LLC, :         **CLASS CERTIFICATION**
SAFETV SHOP LLC, MEDIA ENTERPRISES II, :
INC., ENVENTYS, LLC, JOHN DOES 1-25, :

          Defendants. :

————————————————————— x

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………...…………………………………....I-II

TABLE OF AUTHORITIES………………………………………………………II – VII

INTRODUCTION………………………………………………………………………1

SUMMARY OF THE LITIGATION……………………………………………………1

THE ROLES OF THE DEFENDANTS…………………………………………………2

FACTS COMMON TO THE PROPOSED CLASS……………………………………3

FACTS SPECIFIC TO THE PLAINTIFF………………………………………………5

ARGUMENT……………………………………………………………………………5

I.     Standards for Class Certification………………………………………………6

II.    The Proposed Class Satisfies the Rule 23(a) Factors…………………………7

       A.  The Proposed Class is Sufficiently Numerous……………………………7

       B.  The Claims Meet the Commonality Requirement…………………………7

       C.  Plaintiffs' Claims Are Typical of Those of The Class……………………8

       D.  Plaintiff Will Adequately Represent the Class………………………...…9

III.   The Proposed Class Meets the Rule 23(b)(3) Factors…………………………11

A.     Common Questions of Law or Fact Predominate Over Any Individual Issues……………11

       1.   It is Constitutionally Permissible to Apply the Law of North Carolina to the Claims of the Class……………………………………………………13

       2.   The Application of New York's Choice of Law Rules…………………………13

       3.   In the Alternative, Should the Law of the State of Purchase Apply, State Laws Can be Grouped Into Easily Manageable Categories……………………14

       4.   Application of State Consumer Protection Statutes……………………………15

            a)  The Scope of State UDAP Statutes……………………………………..16

            b)  The Reliance Requirement……………………………………………17

c) Scienter……………………………………………………………..19

d) Conclusion on UDAP Statutes………………………………………20

5. Application of Express Warranty Law……………………………………21

a. The Privity Requirement In Idaho and Arizona……………………..22

b. Conclusion on Express Warranty Claims………………………….23

6. Application of Implied Warranty Law……………………………………23

a. Privity…………………………………………………………..24

b. Conclusion on Implied Warranty………………………………….24

7. Application of Unjust Enrichment Law…………………………………25

a. Categories of Unjust Enrichment Law……………………………25

b. Conclusion On Unjust Enrichment Law…………………………26

B. A Class Action Is the Superior Method of Adjudicating the Controversy…………………27

IV. The Proposed Class Is Ascertainable…………………………………………...28

CONCLUSION………………………………………………………………………….29

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adardour v. Am. Settlements, Inc.*,
No. 1:08cv798, 2009 U.S. Dist. LEXIS 56675 (E.D. Va. July 2, 2009)……………………………17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ………………………………………………………………………6, 11

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
568 U.S. 455 (2013) ………………………………………………………………………7, 12

*In re Amla Litig.*,
  No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950 (S.D.N.Y. October 24, 2017) .......................... 25

*Ashlock v. Sunwest Bank, N.A.*,
  753 P.2d 346 (N.M. 1988) .................................................................................................. 19

*Brownfield v. Bayer Corp.*,
  No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057 (E.D. Cal. July 6, 2009) .............................. 18

*Chisolm v. TranSouth Fin. Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000) ........................................................................................ 18

*Civic Ass'n of the Deaf v. Giuliani*,
  915 F. Supp. 622 (S.D.N.Y. 1996) ....................................................................................... 7

*In re ConAgra Foods*, Inc.,
  90 F. Supp. 3d 919 ........................................................................................................... 17

*Consolidated Rail Corp. v. Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .................................................................................................. 7

*Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, L.L.C.*,
  2013 Nev. Dist. LEXIS 45 (Clark Cty, Nev. June 26, 2013) ..................................................... 17

*Cortigiano v. Oceanview Manor Home for Adults*,
  227 F.R.D. 194 (E.D.N.Y. 2005) .......................................................................................... 6

*DBSI Signature Place, L.L.C. v. BL Greensboro, L.P.*,
  No. CV 05-051, 2007 U.S. Dist. LEXIS 89104 (D. Idaho, Dec. 3, 2007) ................................... 19

*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015) .................................................................................. 25

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ............................................................................................... 10

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................... 8, 16, 22, 28

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ........................................................................................................... 7

*Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co., LLC*,
  382 F. App'x 110 (2d Cir. 2010) ......................................................................................... 21

*Fogarazzao v. Lehman Bros., Inc.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) .......................................................................................... 8

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
    449 F.3d 377 (2d Cir. 2006) ................................................................................ 14

*Gorat v. Capala Bros., Inc.*,
    257 F.R.D. 353 (E.D.N.Y. 2009) .......................................................................... 6

*Gorat v. Capala Bros., Inc.*,
    No. 07-CV-3629, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. April 9, 2010) ............... 28

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................... 14

*In re Great Southern Life Ins. Co. Sales Practices Litig.*,
    192 F.R.D. 212 (N.D. Tex. 2000) ........................................................................ 18

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ................................................................................. 9

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) .................................................................... 8, 15

*State ex rel. Horne v. Autozone, Inc.*,
    258 P.3d 289 (Ariz. 2011) .................................................................................. 19

*Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ................................................................................. 28

*Jermyn v. Best Buy Stores*,
    256 F.R.D. 418 (S.D.N.Y 2009) ......................................................................... 16

*Jones & Co. v. Cole*,
    643 N.E.2d 402 (Ind. App. 1994) ........................................................................ 18

*Keegan v. American Honda Motor, Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................ 16

*Kelton v. Hollis Ranch*, L.L.C.
    927 A.2d 1243 (N.H. 2007) ................................................................................. 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .......................................................................................... 14

*Laster v. T-Mobile United States, Inc.*,
    407 F.Supp.2d 1181 (S.D. Cal. 2005) .................................................................. 18

*In re LILCO Securities Litigation*,
    111 F.R.D. 663 (E.D.N.Y. 1986) ......................................................................... 13

*M'Baye v. N.J. Sports Prod., Inc.*,
    No. 06 Cv. 3439, 2007 U.S. Dist. LEXIS 9101 (S.D.N.Y. Feb. 7, 2007)............................14

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)....................................................................................6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ...........................................................................28

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)................................................................................12

*Moreira v. Sherwood Landscaping Inc.*,
    No. 13-2640, 2015 U.S. Dist. LEXIS 43919 (E.D.N.Y. Mar. 31, 2015) .........................6

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) .....................................................................22

*Northwestern Pub. Serv. v. Union Carbide*,
    236 F. Supp. 2d 966 (D.S.D. 2002)........................................................................19

*Oats v. Nissan Motor Corp.*,
    879 P.2d 1095 (Idaho 1994).................................................................................22

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..........................................................................................13

*Plagens v. Nat'l RV Holdings, Inc.*,
    328 F. Supp. 2d 1068 (D. Ariz. 2004)....................................................................22

*Porrazzo v. Bumble Bee Foods, LLC*,
    822 F. Supp. 2d 406 (S.D.N.Y. 2011).....................................................................23

*Rakes v. Life Investors Ins. Co. of America*,
    No. 06-cv-99, 2007 U.S. Dist. LEXIS 52719 (N.D. Iowa July 20, 2007) .....................14

*Rawson v. Conover*,
    20 P.3d 876 (Utah 2001) ....................................................................................19

*Raysoni v. Payless Auto Deals*, L.L.C.
    766 S.E.2d 24 (Ga. 2014)....................................................................................17

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................................9

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ...........................................................8, 10, 15, 27, 28

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010) .................................................................... 27

*Simon v. Philip Morris, Inc.*,
    124 F.Supp.2d 46 (E.D.N.Y. 2000) ...................................................... 13

*Spread Enters., Inc. v. First Data Merchant Services Corp.*,
    298 F.R.D. 54 (E.D.N.Y. 2014) .............................................................. 6

*St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*,
    687 F. Supp. 820 (S.D.N.Y. 1988) ........................................................ 14

*Strickland v. Kafko Mfg., Inc.*,
    512 So. 2d 714 (Ala. 1987) ................................................................... 19

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ............................................................. 6, 9,

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ......................................................... 15,

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) .................................................................... 8

*Vermont Plastics, Inc. v. Brine, Inc.*,
    79 F.3d 272 (2d Cir. 1996) ................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................7, 8, 24

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ......................................... 13

*York v. InTrust Bank*,
    962 P.2d 405 (Kan. 1998) ..................................................................... 19

*In re Zyprexa Prods. Liab. Litig.*,
    No. 04-MD- 1596, 2009 U.S. Dist. LEXIS 65634 (E.D.N.Y. Jul. 22, 2009) ............................ 13

**Statutes**

Oregon Unfair Trade Practices Act .......................................................... 17

Colorado. Rev. Stat. §§ 6-1-105(e) .......................................................... 17

Consumer Legal Remedies Act ................................................................. 18

Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) .............................. 16

Indiana Code §§ 24-5 ............................................................................................17, 18

Iowa Code §§ 714.H.3 ................................................................................................17

Magnuson-Moss Warranty Act ...........................................................................22, 23

Mississippi Code Ann. §§ 75-24-5(g) .......................................................................17

South Dakota Deceptive Trade Practices and Consumer Protection Law ..................17

Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) ........................................................18

Texas Bus. & Com. Code Ann. §§ 17.46(7) .............................................................17

U.C.C. §2-313(1)(a) ...................................................................................................21

Virginia Consumer Protection Act .............................................................................18

Wyo. Stat. Ann. § 40-12-108(a) ................................................................................18

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................*passim*

New York General Business Law § 349......................................1, 8, 15, 16, 17, 20

New York General Business Law § 350................................................................1, 7

## INTRODUCTION

Plaintiff Mark Principe seeks to represent a class of purchasers of the Gyro Bowl, a product that does not work as represented.

The Gyro Bowl is a bowl designed for small children and the packaging of the Gyro Bowl describes it as "spill-proof." However, the Gyro Bowl is hardly spill proof. Food frequently gets stuck between the inner and outer bowl and the Gyro Bowl becomes as susceptible to spilling as a regular bowl.

Plaintiff seeks to represent a class of all individuals throughout the United States who purchased one or more Gyro Bowls (the "Class") at any time during the applicable statute of limitations period for each claim (the "Class Period"). Plaintiff also seeks to represent, to the extent necessary or appropriate, a subclass of individuals who purchased the Gyro Bowls in the State of New York at any time during the Class Period (the "New York Subclass").

The central question in this litigation is whether the Gyro Bowl lives up to the claims on its packaging. That question can be answered once for all class members and the resolution of that question will largely decide the claims of the class members. The alleged conduct, Accordingly, the class should be certified.

## SUMMARY OF THE LITIGATION

Mr. Principe filed his Complaint in this Court on September 21, 2015 against Defendants Edison Nation, LLC and Plymouth Direct, Inc., bringing claims under NY §§ GBL 349 and 350, the consumer protection laws of all 50 states, the Magnuson-Moss Warranty Act, and for negligent and intentional misrepresentation, breach of express and implied warranties, and unjust enrichment. On August 29, 2016 Plaintiff filed an amended complaint adding Defendants Edison Nation Holdings, LLC, SafeTV Shop, Media Enterprises II, Inc., and Enventys LLC, and maintaining the same causes of action. On November 29, 2017, Plaintiff filed a stipulation of dismissal seeking an order to

dismiss the claims against Plymouth Direct, Inc. and Media Enterprises II, Inc. The Court dismissed the claims on December 21, 2017.

Plaintiff conducted discovery of all Defendants via document requests and interrogatories. Plaintiff also conducted depositions of Louis Foreman, the corporate representatives for Defendant Envetys on August 17, 2017, and Todd Standcombe, the corporate representative for Defendants Edison Nation, Edison Nation Holdings, and SafeTV Shop on September 11, 2017.   Through discovery and depositions, Plaintiff obtained documentation and information regarding the history of the product, the role of each defendant in developing the Gyro Bowl, the representations made in advertising the Gyro Bowl, and Defendants' sales of the Gyro Bowl.

### THE ROLES OF THE DEFENDANTS

- Edison Nation, LLC ("Edison Nation") is the company responsible for developing the Gyro Bowl.

- Edison Nation Holdings, LLC ("Edison Nation Holdings") was the parent company of defendants Edison Nation and SafeTV Shop, LLC ("SafeTV Shop").

- Enventys, LLC ("Enventys") was hired by Edison Nation in 2005 to make the Gyro Bowl more marketable and attractive to consumers and was responsible for the Gyro Bowl packaging.

- SafeTV Shop was responsible for producing the television advertisement used by Media Enterprises to market and sell the Gyro Bowl to consumers.

- Plymouth Direct, Inc ("Plymouth Direct") contracted with Edison Nation in 2010 to sell the Gyro Bowl to retailers, including Walmart, Bed Bath and Beyond, and Target.  Plymouth Direct has been dismissed from the case.

- Media Enterprises II, Inc. ("Media Enterprises") contracted with Edison Nation LLC in 2010 to sell the Gyro Bowl directly to consumers through 'made-for-tv' advertising which directed

2

consumers to call by telephone or go to the website to purchase the product.  Media
Enterprises has been dismissed from the case.

## FACTS COMMON TO THE PROPOSED CLASS

Defendant Edison Nation LLC is the company responsible for developing the Gyro Bowl.
*See* September 11, 2017 Transcript of Todd Standcombe Deposition ("Standcombe Dep.") at 15:5-
16:3, submitted as Exhibit A to the accompanying Declaration of Adam Gonnelli In Support of
Plaintiff's Motion for Class Certification ("Gonnelli Declaration."). The Gyro Bowl was first
introduced in 2010 as a "spill-proof" bowl.  Standcombe Dep. at 22:14-23:8, 41:7-42:9; *see also*
August 17, 2017 Transcript of Louis Foreman Deposition ("Foreman Dep.") at 29:14-23, submitted
as Exhibit C to the Gonnelli Declaration.  The Gyro Bowl was designed based on a 'bowl within a
bowl' concept with a gimble in the middle such that when the outer bowl moved and tilted, the inner
bowl remained upright, ostensibly preventing the contents from spilling out.  Standcombe Dep. at
20:10-21:5; Foreman Dep. at 34:13-19.

In April 2010, Edison Nation contracted with Plymouth Direct, Inc. and Media Enterprises
II, Inc. to sell the Gyro Bowl.  Standcombe Dep. at 22:14-24:19; *see also* April 15, 2010
Commercialization Agreement, attached as Exhibit D to the Gonnelli Declaration.   Plymouth Direct
sold the Gyro Bowl to retailers, including Walmart, Bed Bath and Beyond, and Target, while Media
Enterprises sold the Gyro Bowl directly to consumers through 'made-for-tv' advertising which
directed consumers to call by telephone or access the website to purchase the product.  Standcombe
Dep. at 47: 4-20.

The Gyro Bowl was marketed towards parents of small children as being "spill-proof."  The
packaging for the Gyro Bowl has always stated "The Kid-Proof, Spill-Proof Bowl!", "Spins and
Spins…And Stuff Stays in!" and "Open Side Up…No Matter What!" *See* Exhibit B to the Gonnelli
Declaration; Standcombe Dep. at 41:7-42:9. The same representations were made in the television

3

commercial produced by SafeTV Shop and Edison Nation. Standcombe Dep. 34:17-35:5, 41:22-42:2

  Those statements were false. When food gets stuck between the inner and outer bowl of the Gyro Bowl, which happens very frequently, the outer bowl does not slide around the inner bowl, and the Gyro Bowl becomes as susceptible to spilling as a regular bowl. *See* Plaintiff's Amended Class Action Complaint at ¶ 40; July 24, 2017 Transcript of Mark Principe Deposition ("Principe Dep."), at 11:14-18; 14:5-21, attached to the Gonnelli Declaration at Exhibit E; Standcombe Dep. at 38:13-22 40:3-5 ("if something prevented that internal bowl from rotating, then they aren't [spill-proof]"). Despite labeling the Gyro Bowl as "Spill-proof," Edison Nation conducted only one test of the product's ability to keep contents within the bowl, using an informal focus group of approximately five to ten children. Standcombe Dep. at 31:1-21, 32:24-33:10; Foreman Dep. at 37:2-38:12. Even during this single test, the problem of the inner and outer bowl not sliding together was apparent when the children grabbed the inner and outer bowl together. Standcombe Dep. at 31:22-32:23.

  The design of the Gyro Bowl did not change during the time period it was sold to retailers and consumers. Standcombe Dep. at 25:14-17, 33:19-34:8, 52:17-23. Thus, every Gyro Bowl sold suffered from same design defect, namely that the contents of the bowl have a tendency to get stuck between the inner and outer bowls, allowing the inner bowl to tilt and turn over in the same way a normal bowl would.

  The Gyro Bowl is priced at a substantial premium to ordinary bowls. The purported ability of the Gyro Bowl to prevent its contents from spilling out is the reason for that premium. Standcombe Dep. at 59:3-10 (Q: Were the products priced above that of regular bowls: A: …My guess would be yes. Q: Why did you believe that consumers would purchase the Gyro Bowl or the Loopa Bowl as opposed to regular bowls? A: Because the appeal was that it would limit the spills.);

Principe Dep. at 15:5-7 ("I wouldn't have bought it if it was called a regular bowl, I have plenty of regular bowls").

## FACTS SPECIFIC TO THE PLAINTIFF

Mr. Principe is a citizen of New York, currently residing on Long Island, New York. Plaintiff purchased two Gyro Bowls in the summer of 2015 on Amazon.com for $11.09 each after searching for a spill-proof bowl on the internet. Principe Dep. at 7:6-8:19. Plaintiff purchase the Gyro Bowl based on the representation that it was "spill proof." Principe Dep. at 13:25. Had the Gyro Bowls not been advertised as "spill-proof" Plaintiff would not have purchased them or paid a premium price for them. *See* Plaintiff's Amended Complaint ¶ 13. Plaintiff filled the bowl with cereal and dried snacks and gave them to his two children, who were three and six years old at the time. Principe Dep. at 8:8. Plaintiff used the Gyro Bowls in this manner approximately ten times. Principe Dep. at 12:2. Soon after purchasing the Gyro Bowls, Plaintiff discovered that approximately half of the times his children used the Product, food would get stuck between the inner and outer bowls, causing the contents of the bowl to spill out of the bowls in Plaintiff's basement, on the carpet, and in the car. Principe Dep. 11:14-12:9, 13:17-23.

## ARGUMENT

Plaintiff seeks to represent a national class. The facts here strongly support class certification. All class members bought Gyro Bowls with the same misrepresentation on the package. Standcombe Dep. at 41:7-42:9. All Gyro Bowls were designed in the same manner. Standcombe Dep. at 25:14-17, 33:19-34:8, 52:17-23. The questions of whether the Gyro Bowl performs as represented and whether the statements on the package were false or misleading are ones that can answered once for everyone in the class.

With respect to the law, it is Constitutionally permissible to apply a single state's law, that of North Carolina, to the claims of everyone in the national class. This is because the Defendants are

based in North Carolina and the design, marketing and sale, including the alleged misrepresentations, emanated from North Carolina.  Further, if it is necessary to apply the laws of the states in which consumers purchased the Gyro Bowl, there are only minor, easily manageable differences in state laws as applied to these specific facts.

### I.     Standards For Class Certification

Without certification, consumers will not have their day in court.  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).  Accordingly, any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the class members.  *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (Rule 23 should be "given liberal rather than restrictive construction."); Indeed, "'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gorat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009) (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).  "Although the Court's analysis in the class certification context must be 'rigorous,' courts generally 'take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class.'" *Moreira v. Sherwood Landscaping Inc.*, No. 13-2640, 2015 U.S. Dist. LEXIS 43919, at *14 (E.D.N.Y. Mar. 31, 2015) (certifying class and quoting *Spread Enters., Inc. v. First Data Merchant Services Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014)).

In determining whether a class should be certified, the question is not whether plaintiff will prevail on the merits, but whether, based on the Court's factual and legal determinations, the

requirements of Rule 23 have been established by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

Plaintiffs satisfy each of the requirements of Rule 23(a) and 23(b)(3).

## II.      The Proposed Class Satisfies the Rule 23(a) Factors.

### A.      The Proposed Class Is Sufficiently Numerous.

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Numerosity is satisfied if the proposed class consists of forty or more members. *See Consolidated Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, discovery reveals that the Defendants sold thousands of Gyro Bowls to consumers. *See* Defendant Plymouth Direct Inc.'s and Media Enterprises II, Inc.'s Responses to Plaintiff's Request for Documents, attached as Exhibit F to the Gonnelli Declaration; SafeTV Shop Royalty Statement, attached as Exhibit G to the Gonnelli Declaration. Therefore, numerosity is satisfied.

### B.      The Claims Meet the Commonality Requirement.

As the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury…. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." However, "[c]ommonality does not mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class).

"Indeed, [e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes* at 369.

Here, the question of whether the Gyro Bowl works as represented on the packaging is common to the class. Courts routinely find commonality when claims arise from a uniform misrepresentation. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 476 (C.D. Cal. 2012) (certifying class under New York's GBL § 349 and finding that commonality is met when the "gravamen of plaintiffs' claims … is that Serum should have, but did not, contain flammability warning" and "[b]ecause Serum was packaged and sold uniformly across the nation").

Plaintiffs have therefore met the commonality requirement because there are common questions of law and fact with respect to Plaintiffs' and the prospective Class members' claims against Defendant.

### C.   Plaintiffs' Claims Are Typical of Those Of The Class

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*,

232 F.R.D. 176, 180 (S.D.N.Y. 2005).  Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (reversing denial of class certification); *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("[To deny class certification] because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23.").

Here, Plaintiff purchased two Gyro Bowls in the summer of 2015 on Amazon.com based on the representation that it was "spill proof." Principe Dep. at 13:25.  Soon after purchasing the Gyro Bowls, Plaintiff discovered that approximately half of the times his children used the Product, things would get stuck between the inner and outer bowls, causing the contents of the bowl to spill out.  Principe Dep. 11:14-12:9. The representations on the packaging for the Gyro Bowl have not changed during the class period.  The packaging for the Gyro Bowl has always said ""The Kid-Proof, Spill-Proof Bowl!", "Spins and Spins…And Stuff Stays in!" and "Open Side Up…No Matter What!" *See* Exhibit B to the Gonnelli Declaration; Standcombe Dep. at 41:7-42:9.

Mr. Principe has suffered the same harm based on the same representations as everyone else in the Class.  Therefore, his claims are typical of the Class.

### D.     Plaintiff Will Adequately Represent the Class.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes*, 780 F.3d at 90 (citation omitted).  "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'" *Id.*

(citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Mr. Principe has responded to written discovery requests and has appeared for a deposition. He also demonstrated an understanding of both the basis of the claims and the role of a class representative. *See* Principe Dep. at 12:19-14:4, 24:23-25:23. In addition, his interests are exactly aligned with those of the class members he seeks to represent. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07 ("Lead plaintiffs have each demonstrated their commitment to pursuing these claims by responding to extensive written discovery requests and sitting for lengthy depositions. Further, each lead plaintiff testified he or she understands the requirements of serving as lead plaintiff, and wishes to move forward. Finally, nothing in the record suggests lead plaintiffs' interests are antagonistic to those of other class members.").

Next, Plaintiff's counsel are also qualified to represent the class. The Sultzer Law Group has successfully advocated for consumers' rights, challenging some of the nation's largest and most powerful food, supplement, and beverage corporations for a variety of improper, unfair, and deceptive business practices. *See* Sultzer Law Group Firm Resume, submitted as Exhibit H to the Gonnelli Declaration. The firm has also recently served as lead counsel in the following cases, many of which involve claims for false advertising of consumer products:

- *Foster, Andrew Tyler et al. v. L-3 Communications EOTECH, Inc., et al.*, 15-cv-03519 (W.D. Mo.) (obtained monetary recovery for consumers who purchased falsely advertised holographic weapons sights)

- *Davenport, Sumner, et al. v. Discover Financial Services, et al. (United States District Court for the Northern District of Illinois 15-cv-06052)* (obtained a settlement fund of $5,000,000.00 for consumers in a case involving the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq.)

- *Nicotra, Jennifer et al. v. Babo Botanicals, LLC*, 16-cv-00296 (E.D.N.Y.) (obtained injunctive relief against company for claiming products were natural)

- *Rapoport-Hecht, Tziva et al. v. Seventh Generation, Inc.* (SDNY14-Cv-9087) (obtained a settlement fund of $4,500,000 for consumers who purchased cleaning and cosmetics products which were falsely advertised as "natural.")

- *Run Them Sweet, LLC v. CPA Global, Ltd., et al.*, 1:16-cv-1347 (E.D. Va.) (obtained a settlement fund of $5,600,000 for consumers who were overcharged with respect to foreign patent renewal services)

- *Vincent, Wesley, et al. v. People Against Dirty, PBC. and Method Products, PBC.*, (SDNY) 7:16-cv-06936-NSR) (obtained a settlement fund of $2,800,000 for consumers who purchased soap products which were falsely advertised as "natural.")

Accordingly, Mr. Principe and his counsel satisfy the adequacy requirement.

## III.   The Proposed Class Meets the Rule 23(b)(3) Factors.

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Factors to be considered in the predominance and superiority analyses include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  *Id.*

Both the predominance and superiority requirements are met here.

### A.   Common Questions of Law or Fact Predominate Over Any Individual Issues.

Predominance is a test "readily met in certain cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625.  Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in

11

favor of the class." *Amgen* at 459 (emphasis in original). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). "[T]he Supreme Court has also instructed that Rule 23(b)(3) does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof . . . individual questions need not be absent." *Sykes*, 780 F.3d at 81 (citations and internal alterations omitted).

Common issues of fact unquestionably predominate in this litigation. The facts in the case focus on the conduct of the Defendants, not the class members. Each class member purchased one or more Gyro Bowls and was exposed to the same misrepresentation on the packaging. The overriding common question at the center of this case is whether the Gyro Bowl lives up to those representations. This is a binary issue, the resolution of which will be outcome-determinative for the entire class. Thus, common factual issues predominate over any individual issues.

With respect to legal issues, the central question is which states' law applies to the claims of the class members. Plaintiff believes the law of North Carolina should be applied. However, even if the laws of the consumers' states of residence must be applied, common legal issues still predominate and the case is still eminently manageable. That is because a product that does not live up to the representations on its packaging violates the law in every state, and where state laws impose different requirement, those differences can also be addressed on a classwide basis for those states.

12

1.   **It is Constitutionally Permissible to Apply the Law of North Carolina to the Claims of the Class**

A Court may apply a single state's substantive laws in a Constitutionally permissible manner where that State has either a significant contact or significant aggregation of contacts so that choice of that State's law is neither arbitrary nor fundamentally unfair.  Usually that is the law of the state in which the defendant is located.  *Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985)*; *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD- 1596, 2009 U.S. Dist. LEXIS 65634 at * 58 (E.D.N.Y. Jul. 22, 2009).  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (Cal. Ct. App. 2001) (holding that California law could be applied extraterritorially "to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California"); *In re LILCO Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("Shutts does not require us to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all Plaintiffs, regardless of residence"); *Simon v. Philip Morris, Inc.*, 124 F.Supp.2d 46, 78 (E.D.N.Y. 2000) (law of Philip Morris' home state of New York applied to claims of national class).

In this case, that state is North Carolina because all the defendants are based there and the uniform misrepresentations forming the basis of each class member's claims emanated from North Carolina. Because these connections constitute a sufficient "aggregation of contacts" under *Shutts* to permit applying North Carolina law to the claims of non-resident plaintiffs, it is constitutionally permissible to do.

2.   **The Application Of New York's Choice of Law Rules**

The application of New York choice of law rules does not require a different result.  A federal court generally must apply the choice-of-law principles of the state in which it sits.  *See*

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New York choice of

law rules, with respect to the plaintiff's claims for unfair and deceptive consumer practices,

which sound largely in tort, the Court must determine which jurisdiction has the greatest

interest in this litigation. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d

377, 384 (2d Cir. 2006).  With respect to the plaintiff's claims for breach of warranty and

unjust enrichment, the Court applies the law of the jurisdiction with the most significant

contacts to this dispute. *See St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F. Supp.

820, 826 (S.D.N.Y. 1988) (applying significant-contacts test to breach of warranty claims);

*M'Baye v. N.J. Sports Prod., Inc.*, 06 Cv. 3439, 2007 U.S. Dist. LEXIS 9101 (S.D.N.Y. Feb. 7,

2007) (applying significant-contacts test to unjust enrichment claims).

Here, North Carolina, as the location where defendants are located and from where the

alleged misconduct emanated, has the greatest interest in the outcome of the litigation, and is

the forum with the most significant contacts to this dispute.  *See Rakes v. Life Investors Ins. Co.*

*of America*, No. 06-cv-99, 2007 U.S. Dist. LEXIS 52719, *24 (N.D. Iowa July 20, 2007)

(finding that Iowa law applies to the claims of out of state plaintiffs where the defendant was

based in Iowa).

### 3. In the Alternative, Should The Law Of The State Of Purchase Apply, State Laws Can Be Grouped Into Easily Manageable Categories

While plaintiff believes that the law of North Carolina should apply to the claims of all

Class members, some courts have held that the consumer protection statutes of the states in

which class members reside should apply.  *See, e.g. In re Grand Theft Auto Video Game*

*Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008).  Should the Court also reach this

conclusion, common questions of law still predominate.

Indeed, as shown below, the resolution of this case on a national basis will not be

much more difficult that resolving Mr. Principe's claims under New York law. That is because a product that does not live up to the representations on its packaging violates the law in every state. Where the laws of the states vary, the differences can be easily managed by posing a few additional classwide questions for those states.

**4.** **Application of State Consumer Protection Statutes**

If Mr. Principe's claims are governed by the law of his state of residence, he would have to show, under New York's GBL §349, that: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured. The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. *See Scotts EZ Seed Litig.*, 304 F.R.D. at 409.

Accordingly, a determination of whether the Defendants' conduct was "consumer-oriented," whether its representations were misleading to an objectively reasonable consumer, and whether the consumer suffered damage, would all focus on the conduct of the Defendants. In making these determinations for Mr. Principe, the answers would also address the claims of his fellow New York class members. *See Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("Plaintiffs' GBL claims thus depend on generalized evidence. Classwide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Guido*, 284 F.R.D. at 483 (finding common issues predominate as to injury on plaintiffs' GBL § 349 claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (certifying GBL § 349 class when

15

manufacturer of front-loading washing machines failed to disclose washers' propensity to develop biofilm, mold, mildew and foul odors); *Keegan v. American Honda Motor, Co.,* 284 F.R.D. 504, 552 (C.D. Cal. 2012) (certifying New York GBL § 349 claims and finding predominance when defendants allegedly provided the "same information to the entire class, *i.e.*, no information, concerning the possibility of excessive negative camber"); *Jermyn v. Best Buy Stores*, 256 F.R.D. 418, 435 (S.D.N.Y 2009) (certifying GBL § 349 class and holding that "[c]ourts have repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification"); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (finding common injury susceptible of classwide proof).

Unsurprisingly, since state consumer protection statutes (Unfair and Deceptive Act and Practices, or "UDAP," statutes) have common roots in the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), they all have similar elements. The answers to the questions posed under GBL § 349 will also dispose of the UDAP statute claims in 35 other states and the District of Columbia. The differences in state UDAP statutres in the other 15 states fall into three categories: the scope of the statute; the element of reliance; and the element of scienter.

### (a)   The Scope of State UDAP Statutes

Forty-three states, including New York, and the District of Columbia have broad prohibitions against deceptive conduct similar to New York's. *See* NY GBL § 349 (a) (declaring unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service"). The other seven states, Colorado, Indiana, Iowa, Mississippi, Oregon, South Dakota and Texas, limit coverage to specific delineated conduct.

However, the conduct at issue in this case, making a false representation on the package

of a consumer product, is squarely among the conduct covered by the UDAP statutes in those

seven states.  *See* Colorado. Rev. Stat. §§ 6-1-105(e) (making it unlawful to "make a false

representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of

goods, food, services, or property or a false representation as to the sponsorship, approval,

status, affiliation, or connection of a person therewith"); Oregon. Rev. Stat. §§ 646.607(1)

(same); South Dakota Codified Laws §§ 37-24-6(1) (same); Texas Bus. & Com. Code Ann. §§

17.46(7) (same); Indiana Code §§ 24-5-0.5-3(2) (same); Mississippi Code Ann. §§ 75-24-5(g)

(same); Iowa Code §§ 714.H.3 (same); s*ee also In re ConAgra Foods*, Inc., 90 F. Supp. 3d 919,

997-98 (the Colorado Consumer Protection Act, the Oregon Unfair Trade Practices Act, the

South Dakota Deceptive Trade Practices and Consumer Protection Law and the Texas

Deceptive Trade Practices-Consumer Protection Act all apply to misleading product labels).

Accordingly, the conduct alleged in this case falls within the scope of all UDAP statutes

and a determination of the deceptiveness of the alleged misrepresentations under GBL § 349

will apply under all statutes.

**(b)**   **The Reliance Requirement**

In seven states, Nevada, Georgia, Indiana, Wyoming, Virginia, Texas and in part,

California, some showing of reliance is required.  *See Copper Sands Homeowners Ass'n, Inc. v.*

*Copper Sands Realty, L.L.C.*, 2013 Nev. Dist. LEXIS 45 (Clark Cty. Nev. June 26, 2013)

(Nevada's UDAP statute requires a showing of reliance when the claim involves an affirmative

misrepresentation); *Raysoni v. Payless Auto Deals*, L.L.C., 766 S.E.2d 24 (Ga. 2014) (reading

reliance into the Georgia UDAP statute); *Adardour v. Am. Settlements, Inc.*, No. 1:08cv798,

2009 U.S. Dist. LEXIS 56675, *7 (E.D. Va. July 2, 2009) (reliance is required under Virginia

Consumer Protection Act); Ind. Code § 24-5-0.5-4(a); 178 Wyo. Stat. Ann. § 40-12-108(a);

Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) (West); *Brownfield v. Bayer Corp.*, No. 2:09-

cv-00444, 2009 U.S. Dist. LEXIS 63057 at *9 (E.D. Cal. July 6, 2009) (element of reliance in

Consumer Legal Remedies Act).

However, in three of these states, Virginia, Texas, and Indiana, reliance can be

presumed. *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 561 (E.D. Va. 2000)

(reliance can be presumed under Virginia Consumer Protection Act); *In re Great Southern Life

Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 220 (N.D. Tex. 2000) (under Texas Deceptive

Trade Practices Act, "Where representations have been made in regard to a material matter and

action has been taken, in the absences of evidence showing to the contrary it will be presumed

that the representations were relied on.") (internal quotations omitted); *Jones & Co. v. Cole*,

643 N.E.2d 402 (Ind. App. 1994) (presumption of reliance under Indiana law). Further, in

California, reliance need only be shown by the lead plaintiff in a class action. *Laster v. T-

Mobile United States, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005) (only lead plaintiff

needs to show reliance, which can be established by showing that the misrepresentation was a

substantial factor in the purchasing decision).

Accordingly, the reliance requirements of these states can be determined by asking two

questions: 1) Can reliance be presumed? (Virginia, Indiana, Texas); and 2) Did Mr. Principe

rely on the representation that the Gyro Bowl was "spill-proof"? (California). These two

questions, in addition to the standards discussed above, will encompass 48 states and the

District of Columbia.

Plaintiff will not include the states of Georgia and Wyoming in the UDAP class.

**(c)   <u>Scienter</u>**

The states' treatment of scienter falls into three categories:

18

1. Those with no scienter requirement;

2. Those which require knowledge of the conduct but without intent to deceive; and

3. those that require some intent to deceive.

Forty-one states, including New York, have no scienter requirement.

Three states (New Mexico, Arizona, and Kansas) require only that the seller intends to make the representation at issue, not that there is intent to deceive. *See State ex rel. Horne v. Autozone, Inc.*, 258 P.3d 289 (Ariz. 2011) (Arizona UDAP statute does not require proof of a specific intent to deceive; the only showing of intent required is an intent to do the act involved); *York v. InTrust Bank*, 962 P.2d 405 (Kan. 1998) (Kansas statute's requirement that defendant's use of deceptive tactic be willful does not require showing that defendant intended to violate the statute); *Ashlock v. Sunwest Bank, N.A.*, 753 P.2d 346 (N.M. 1988) (New Mexico UDAP statute only requires showing that defendant intended to make the representation at issue).

Five states (South Dakota, Idaho, Alabama, Utah, and New Hampshire) require a plaintiff to show that a defendant knowingly violated the UDAP statute. *See DBSI Signature Place, L.L.C. v. BL Greensboro, L.P.*, No. CV 05-051, 2007 U.S. Dist. LEXIS 89104, at *60 (D. Idaho, Dec. 3, 2007) (under Idaho Consumer Protection Act, plaintiff must show that defendant knows or in the exercise of due care should know that he has engaged or is engaging in prohibited conduct), aff'd, 343 Fed. Appx. 267 (9th Cir. 2009); *Strickland v. Kafko Mfg., Inc.*, 512 So. 2d 714 (Ala. 1987) (noting that Alabama UDAP statute creates a defense if defendant did not knowingly commit act or engage in activity that violates the statute); *Rawson v. Conover*, 20 P.3d 876 (Utah 2001) (knowing or intentional deception is required under Utah statute)); *Kelton v. Hollis Ranch*, L.L.C., 927 A.2d 1243 (N.H. 2007) ("unfair" and "deceptive" imply some element of knowledge or intent under New Hampshire statute); *Northwestern Pub. Serv. v. Union Carbide*, 236 F. Supp. 2d 966 (D.S.D. 2002) (South Dakota statute's general prohibition of deception requires knowledge and intent).

19

Accordingly, the knowledge and intent of the Defendants must be determined for eight states. However, this inquiry is also amenable to classwide treatment, since knowledge and intent focus solely on the state of mind of the defendant and there are no individual issues involved.

**(d)   Conclusion on UDAP Statutes.**

There are three questions to address the GBL § 349 elements:

1) Is the "spill-proof" representation consumer oriented?;

2) Is the "spill-proof" misrepresentation material and deceptive to an objectively reasonable consumer?; and

3) Were consumers injured as a result of the misrepresentation?

Each of these questions are suitable classwide treatment. A determination on these elements will also completely address the claims of consumers in 35 other states and the District of Columbia. Since these elements would have to be addressed to determine Mr. Principe's individual claims (as well as those of the New York class), they easily predominate over any individual issues and are manageable.

With respect to the other 15 states, additional questions must be asked concerning reliance and scienter. However, these questions are also suitable for classwide resolution:

4. Did Mr. Principe rely on the representations? (California)

5. Can reliance be presumed? (Virginia, Texas and Indiana)

6. Did Defendants knowingly misrepresent the attributes of the Gyro Bowl? If this answer is yes, the finder of fact need go no further and the scienter requirement is satisfied for all fifty states and the District of Columbia. If the answer is no, the UDAP claim for consumers in Idaho, Alabama, Utah, New Hampshire, and New Mexico and the District of Columbia will fail.

20

7. Did the Defendants knowingly make the representations at issue? If the answer is yes, scienter is established for the remaining forty-five states.  If the answer is no, the claims of consumers in South Dakota, Virginia, Arizona, and Kansas will fail.

Since reliance can be evaluated on a classwide basis and scienter addresses only the conduct of the Defendants, these questions will not impact the predominance analysis or materially affect the manageability of the litigation.

Accordingly, these seven questions, which can be answered using common evidence, will address the state UDAP claims of all consumers except for those in Wyoming and Georgia.  Thus, the Court can certify the UDAP claims of the national class with subcategories for the additional reliance and scienter questions.  Wyoming and Georgia will be excluded.

### 5.  Application of Express Warranty Law

The elements of a breach of express warranty in New York include:

(1) the existence of an express warranty;

(2) that the goods did not comply with the warranty; and

(3) that the failure to comply with the warranty caused an injury.  *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co., LLC*, 382 F. App'x 110, 111 (2d Cir. 2010).  These same elements are required for breach of express warranty claims in all fifty states and the District of Columbia.

Each of the three elements listed above, existence of a warranty, breach, and injury, are amenable to classwide resolution and will resolve the express warranty claims in forty-eight states.

First, Defendants warranted that the Gyro Bowl was "spill-proof."  See Exhibit B to the Gonnelli Declaration; Standcombe Dep. at 41:7-42:9. This representation constitutes an express written warranty in all fifty states and the District of Columbia.  *See* U.C.C. §2-313(1)(a) ("any

21

affirmation of fact or promise made by the seller to the buyer which relates to the goods and

becomes part of the basis for the bargain creates an express warranty that the goods shall

conform to the affirmation or promise"). In any case, every class member in the country

received the same representations (Standcombe Dep. at 41:7-42:9), so the question of whether

the statements constitute a written warranty is common to everyone.

Second, every consumer received the same product. Standcomb Dep. at 51:14-16.

Accordingly, the question of the whether the Gyro Bowl lived up to Defendants'

representations can be determined once for all class members.

Third, with respect to the injury prong, class members have been damaged to the extent

the product did not live up to its warranty. That amount, whether the entire purchase price or

some fraction thereof, can also be determined once for everyone. *See Ebin* at 569 (damage

calculation amenable to classwide proof).

### a. The Privity Requirement In Idaho and Arizona

Two states, Idaho and Arizona, have a direct privity requirement for express warranty

claims for economic damages. *See Oats v. Nissan Motor Corp.*, 879 P.2d 1095 (Idaho 1994);

*Plagens v. Nat'l RV Holdings, Inc.*, 328 F. Supp. 2d 1068, 1074 (D. Ariz. 2004).

At the outset, the Magnuson-Moss Warranty Act eliminates the privity requirement for

express warranties. 15 U.S.C. § 2301(3); *see also Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d

272, 280 (2d Cir. 1996). In addition, the doctrine of the third-party beneficiary can eliminate

the vertical privity requirement. While the statute and caselaw are silent in Arizona and Idaho

on whether a retail buyer qualifies as a third-party beneficiary, that is the general rule in other

jurisdictions. *See, e.g., In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983–985

(N.D. Cal. 2014) (Cal. and N.C. law).

Accordingly, with respect to the privity issue, the only question for the Court to answer

with regard to Arizona and Idaho is whether the Magnuson-Moss Act eliminates the need for

vertical privity or whether Class members in those states qualify as third-party beneficiaries of

defendants' warranty.  If the answer to either question is yes, then consumers in those two

states will succeed on the privity issue.  If the answer is no, they will not, and their express

warranty claims will fail.

     **b.**   **Conclusion on Express Warranty Claims**

In forty-eight states and the District of Columbia, a determination of the existence of a

warranty, a breach, and injury will dispose of the claims of the class members in those states.

Each of these issues can be decided on a classwide basis.  For Idaho and Arizona, the question

of whether the Magnuson-Moss Warranty Act eliminates the need for privity or if class

members are third party beneficiaries must be asked.

The Court can certify a national class for the breach of express warranty claims with the

two additional questions for Idaho and Arizona.

     **6.**   **Application of Implied Warranty Law**

Plaintiff has also brought claims for breach of implied warranty of fitness for a

particular purpose.  Plaintiff's Amended Complaint ¶¶ 112-116.  In order to demonstrate breach

of the implied warranty for fitness for a particular purpose in New York, a plaintiff must show

that the product was not reasonably fit for its intended purpose when used in the customary,

usual and reasonably foreseeable manner, that defendant was aware of that fact, and that the

plaintiff was damages by defendant's breach.  *Porrazzo v. Bumble Bee Foods, LLC*, 822 F.

Supp. 2d 406, 420-21 (S.D.N.Y. 2011).

Since Plaintiff's theory is grounded in a defective design common to all Gyro Bowls, the

breach of implied warranty claim can be addressed with common proof.  *Tait v. BSH Home*

*Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (certifying a class of New York

consumers claiming breach of implied warranty). Here, the reasonable expectations for the performance of the Gyro Bowl as a "spill-proof" bowl, the design flaws which caused it to be susceptible to spilling, and Defendants' knowledge of that fact are subject to common proof.

This same showing is required under the laws of all fifty states and the District of Columbia. The only relevant difference in state implied warranty laws is the privity requirement.

### a.   Privity

On these facts, a purchase of a new consumer product, there is no requirement of vertical privity in 35 states and the District of Columbia: Alaska, Arkansas, California, Colorado, Delaware, Hawaii, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming.

Fifteen states maintain vertical privity requirements with respect to implied warranty claims for economic damages: Alabama, Arizona, Connecticut, Florida, Georgia, Idaho, Illinois, Kentucky, New York, North Carolina, Ohio, Tennessee, Vermont, Washington, and Wisconsin. Again, however, if class members are third-party beneficiaries of the warranty made by Defendants, the privity requirement is no bar to an implied warranty claim in these states.

For these fifteen states, the additional question of whether the third-party beneficiary exception applies will have to be asked. However, this question can also be resolved with common proof.

### b.   Conclusion on Implied Warranty

The questions that can answered in "one stroke," *Dukes*, 564 U.S. at 340, with respect

to the claims of breach of implied warranty are whether the "particular purpose" of the Gyro Bowl is not to spill, whether the Product in fact, fulfills that purpose, whether or not defendants were aware that it did not, and the resulting damage.

In addition, in the fifteen states that have a vertical privity requirement for claims for economic damages, the question of whether class members are third party beneficiaries must be asked.  Accordingly, the Court can certify implied warranty claims for class treatment.

### 7.   Application of Unjust Enrichment Law

The approach to unjust enrichment law is less homogenous that that of UDAP statutes and warranties.  Under New York law, "a plaintiff seeking damages for a claim of unjust enrichment must establish three elements: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015) (internal quotation marks omitted). Plaintiff alleges that the claims that the Gyro Bowl was "spill-proof" was false, and that the Product was worth less than what the Class members paid for it as a result.  The truth of those allegations does not vary between plaintiffs, and if those allegations are borne out by the evidence, a jury need only decide once whether equity requires restitution.  *See In re Amla Litig.*, No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950 at * 30 (S.D.N.Y. October 24, 2017) (certifying New York and Florida class of consumers with unjust enrichment claims).

### a.   Categories of Unjust Enrichment Law

State unjust enrichment laws can be grouped into four categories:

1. States in which the elements of an unjust enrichment claim are: (a) a benefit conferred on the defendant; (b) at the plaintiff's expense; and (c) under circumstances that would make retention of the benefit unjust. Twelve states are in this category: California, Colorado, Connecticut, Georgia, Illinois, Iowa, Kansas, Michigan, New Mexico, New York,

Pennsylvania, and Washington.  Each element can be addressed with common evidence.

2. States that use five elements: (a) an enrichment; (b) an economic detriment or loss; (c) a connection between the enrichment and the impoverishment; (d) an absence of justification for the enrichment and the impoverishment; (e) the absence of a legal remedy. Four states are in this category: Arizona, Delaware, Louisiana and North Dakota. The additional elements, the existence of an adequate remedy at law and linking the misrepresentations to the loss, are both legal issues that can be decided once for the jurisdictions in categories 2 and 3.  No inquiry into the individual experiences of the class members will be necessary.

3. States that add an "appreciation," or scienter, element, or that the defendant understood they were receiving a benefit to the factors in No. 2, above. Twenty-two states can be grouped in this category: Alabama, Alaska, Florida, Idaho, Kansas, Maine, Maryland, Missouri, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Wisconsin and Wyoming.  Scienter focuses only on the Defendants knowledge, so can be determined once for all consumers.

4. States that do not clearly delineate the elements of the claim and tend to use the Restatement elements from No. 1, above. States in this category are: Arkansas, Georgia, Hawaii, Kentucky, Massachusetts, Minnesota, Mississippi, Montana, Oklahoma, Vermont, Washington, and West Virginia.

### b. **Conclusion On Unjust Enrichment Law**

As an initial matter, the twenty-four jurisdictions in categories 1 and 4 can be grouped together and common evidence could be used to determine whether the Defendants were unjustly enriched at the expense of class members.  Those questions would fully address the claims in those states.

In addition to the questions in category 1, for categories 2 and 3, two additional questions would must be asked: whether there is a connection between the enrichment and the loss, and whether there is an adequate legal remedy.  Answers to those questions alone would resolve the claims in four more states.

Lastly, assuming class members in states in category two have satisfied their burden, a determination of scienter will completely resolve resolve the claims in the remaining twenty-two states.

**B.**      **A Class Action Is the Superior Method of Adjudicating the Controversy**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."  The Court must consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of certification.

Each class member's interest in bringing his or her own case is negligible, if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery. When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.").

Plaintiff's counsel are unaware of any other litigation concerning class members' claims,

and it is desirable to concentrate litigation of the claims in one forum.

The only manageability issue to be addressed concerns the grouping of state law claims into manageable categories. As discussed *supra* at III(A), on these facts, the differences among state consumer and warranty laws are manageable.

## IV. The Proposed Class Is Ascertainable.

Though it does not appear in the text of Rule 23, courts in the Second Circuit have recognized an "implied requirement of ascertainability." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (citing *Ebin*, 297 F.R.D. 567). Ascertainability turns on the definition of the proposed class. *See Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). The class must be "identifiable" such that "its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" *Ebin*, at 567 (quoting *Gorat v. Capala Bros., Inc.*, No. 07-CV-3629, 2010 U.S. Dist. LEXIS 35451 * 5 (E.D.N.Y. April 9, 2010)).

That not all class members kept receipts or are otherwise identifiable from documentary proof is of no moment. In *Ebin,* an ascertainable class was defined as "persons in the United States who purchased Capatriti [olive oil] packed before March 1, 2013 . . ." 297 F.R.D. at 567. The defendant contended that lack of proof of purchase precluded ascertainability, but the Court found that defendant's proposed definition of ascertainability "would render class actions against producers almost impossible to bring." *Id.*; *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 ("The Court agrees with Judge Rakoff's reasoning in *Ebin*. Declining to certify classes when consumers are likely to lack proof of purchase would render class actions against producers almost impossible to bring.") (internal quotations omitted)).

Here, as in *Ebin* and *Scotts EZ Seed*, the Class is defined by objective criteria: those who

28

purchased one or more Gyro Bowls during the class period. There is nothing subjective about these definitions – individuals either purchased one, or they did not. As such, the Class is ascertainable.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for class certification should be granted.

Respectfully Submitted,

**THE SULTZER LAW GROUP, P.C.**

/s/ Adam Gonnelli

By: _____
    Jason P. Sultzer, Esq. (JS4546)
    Joseph Lipari, Esq. (JL3194)
    Adam Gonnelli, Esq. (AG4782)
    Jeremy Francis, Esq. (JF6985)
    14 Wall Street, 20th Floor
    New York, NY 10005
    Tel: (212) 618-1938
    Fax: (888) 749-7747
    sulzerj@thesultzerlawgroup.com
    liparij@thesultzerlawgroup.com
    gonnellia@thesultzerlawgroup.com
    francisj@thesultzerlawgroup.com


**ROSENBERG FORTUNA & LAITMAN, LLP**
    Brett D. Zinner (BZ 3324)
    666 Old Country Road, Suite 810
    Garden City, New York 11530
    Tel: (516) 228-6666
    Fax: (516) 228-6672
    brett@rosenbergfortuna.com

    *Counsel for Plaintiff and the Proposed Class*